| | |
|---|---|
| STATE OF MAINE<br>CUMBERLAND, ss | SUPERIOR COURT<br>CIVIL ACTION<br>Docket No.: |

| | |
|---|---|
| Thomas E. Brown, Jr., | |
| Plaintiff | Case No.: |
| v. | COMPLAINT |
| Mutual of Omaha and<br>Seafax, Inc. | |
| Defendants | |

Plaintiff, Thomas E. Brown, Jr., for his Complaint against Defendant Mutual of Omaha Insurance Company ("Mutual"), states as follows:

1. Mr. Brown is an individual who, at times relevant to this Complaint, resided in New Gloucester, Maine and who is or was a participant in group welfare benefit plan (the "Plan"), sponsored by her former employer, Seafax, Inc. ("Sponsor").

2. Upon information and belief, the Plan is funded, in part, through a group insurance policy Mutual sold to the Sponsor (the "Policy").

3. Mutual is a foreign company that provides group insurance coverage to residences of Maine.

4. Mutual acts as the administrator and/or fiduciary of the Plan for purposes of disability benefit determinations made pursuant to the Plan and Policy.

5. Mutual, as the administrator and insurer of claims for disability benefits under the Plan, operated with a financial conflict of interest that permeated its decision-making process.

6. Mr. Brown brings this action under the Employee Retirement Income Security Act ("ERISA") 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B), to recover benefits under the Plan and Policy.

7. This Court has subject matter jurisdiction over this action, and it may assert personal jurisdiction over the Defendants pursuant to ERISA 502(e)(2), 29 U.S.C. 1132(e)(2).

**Claim for Relief**

8. The Plan provides that Mutual will provide short-term and long-term disability benefits to participants who are considered disabled.

9. The Plan and Policy, in relevant part, define disability as the inability to perform the material duties of the insured's occupation.

10. Prior to his total disability, Mr. Brown served as director of account management, an occupation Mutual determined to be sedentary, for the Sponsor.

11. In July 2017, Mr. Brown was diagnosed with Lyme disease, which was confirmed through testing. With respect to his condition, Mr. Brown suffers from headaches, sleeping difficulties, cognitive dysfunction, fatigue, as well as joint and nerve pain exacerbated from Lyme disease to such an extent it interfered with his ability to perform activities of daily living.

12. Between July 2017 and April 2018, Mr. Brown struggled to fulfill his occupational duties while his condition continued to deteriorate.

13. Mr. Brown stopped working on April 23, 2108, and filed a claim for short-term disability ("STD") benefits.

14. Mutual approved his STD claim and paid him benefits for the period of April 23, 2018 through July 22, 2018.

15. Meanwhile, Mr. Brown continued to suffer from fatigue, cognitive dysfunction, headaches, insomnia, and joint pain. Mr. Brown maintained a subsedentary capacity.

16.     Mutual terminated Mr. Brown's claim for STD benefits on June 17, 2018, but waited until June 28, 2018, before it issued a written denial. Around the same time, Mutual denied Mr. Brown's LTD claim.

17.     In its denial letter, Mutual found that further review of the records provided that Mr. Brown's testing provided non-specific results and that he could return to work.

18.     Specifically with respect to his diagnosis of Lyme disease, Mutual opined decided as follows: "you do not suffer from Lyme disease and there is no reason for disability from an infectious disease point of view as your condition and symptoms of such do not rise to a level of severity to limit your functional capacity."

19.     On December 21, 2018, Mr. Brown appealed Mutual denial and submitted substantial documentation demonstrating the severity of his claim, as well as additional medical documentation demonstrating the extent of his condition and the resulting restrictions and limitations. For example, Mr. Brown submitted a narrative letter from his primary provider, Susan Ackerly, ND CPM who opined as follows:

> I am a Family Medicine doctor in Maine and, in this role, have treated and examined Thomas "TJ" Brown on many occasions for more than three years. During this time, Mr. Brown has attended his regularly scheduled month treatment appointments, during which I exam his physical capabilities and test for cognitive deficits.
>
> Since 2015, Mr. Brown has suffered from progressive profound fatigue, headaches, cognitive deficits, insomnia, shortness of breath, neuralgia, arthralgia, and neuroborreliosis. Mr. Brown's conditions have progressed since their onset in 2015 such that he is unable to perform even basic sedentary work on a full time basis.
>
> Mr. Brown is easily fatigued by any activity, including activities of daily living. Fatigue further prevents more than an hour of walking, standing, or even sitting. I have witnessed the profound impact fatigue takes on Mr. Brown.
>
> Mr. Brown also experiences up to 8-10 headaches a month. These headaches are completely debilitating from onset until the pain subsides, a time that can be as short as 30 minutes or as long as 4-5hours, depending on the day. Frankly, his headaches are greatly unpredictable in onset, severity, and duration. What is

consistent, however, the Mr. Brown's need to escape audio and visual stimuli and rest, without interruption, in order to relieve the headache. In other words, when a headache onsets, Mr. Brown must extricate himself from his current situation, find a quiet and preferably dark room, and rest for, at times, several hours. During these headaches, Mr. Brown is unable to even communicate, let alone perform any sedentary work.

More recently, Mr. Brown has exhibited cognitive deficits that are quite concerning. Specifically Mr. Brown has exhibited during our treatment sessions memory impairment and difficulty concentrating, among other things. Given his battles with fatigue, we believed a Brainspan was a nice alternative for testing. A recent Brainspan, Mr. Brown scored in the poor range on working & recognition memory tests, sustained attention tests, and processing speed tests. Ms. Brown scored in the Low range for cognitive flexibility. These deficits independently prevent Mr. Brown from returning to his prior Director occupation with Seafax.

Beyond the foregoing, Mr. Brown is unable to sleep due to restlessness (in conjunction with the fatigue) and pain, caused by neuralgia and arthralgia. These conditions provide a stiff and painful overplay for Mr. Brown's already disabled state. Indeed the pain is great, I has further limited Mr. Brown's ability to walk, stand, or sit for prolonged periods of time.

I've got to know Mr. Brown fairly well since 2015, during which time I've performed a thorough physical examination on many occasions. It is my opinion that Mr. Brown could not return to any sedentary occupation on a full time or even part time basis, including his prior high functioning occupation of Director at Seafax here in Maine.

Dr. Ackerly supplemented her statement on February 5, 2019. She opined as follows:

As you are aware, I am a Family Medicine doctor and, in this role, have treated and examined Thomas "TJ" Brown on many occasions for more than three years. I have had the opportunity to review the independent Neuropsychological File Review performed by Dr. Maroof and the Peer Review performed by Dr. Brusch.

With respect to Dr. Brusch's report, I stand by my medical opinion set forth in my prior submissions, except to note that the notion that Mr. Brown is malingering is ridiculous. If anything, Mr. Brown underreports his symptoms. When his symptoms wax or wane, he hopes and attempts to act as if he is improving. Unfortunately, the reality of his physical condition remains and has not improved to permit even basic *consistent* sedentary work, and especially not the kind of work he has been engaged in prior to this time.

He is unable to perform many basic activities of daily living. There are days he has to take a break from doing dishes due to the pain and inflammation he experiences.

4

He is unable to perform any strenuous activity or he will be incapacitated for hours or days. Any stress, either physical or mental results in significant joint and muscle pain and fatigue. His previous employment required that he walk throughout the building to meet with clients and other employees, which he would be unable to do now.

His cognitive impairment interferes with his ability to evaluate financial data that was the hallmark of his job as director of accounting. Deficits in his short-term memory and retention of any information prevent him from attending to the analysis needed in that job position. He is unable to follow the thread of conversations and has great difficulty with being able to focus on a single activity, let alone the multi-tasking required of him. There is no way he can provide oversight and management of other employees in his department as he has done in the past. Based upon my long standing relationship with Mr. Brown, I do not believe he has exaggerated his symptoms at all.

With respect to Dr. Moroof, I should include in addition to my prior statement that, during my treatment of Mr. Brown's Lyme disease, I have performed many mental status examinations including assessment of speech, affect, thought content and process. Mr. Brown has exhibited memory impairment, disorganized and tangential thoughts, and difficulty concentrating, among other things. Given his battles with mental function and cognition, we utilized the BrainSpan testing, as opposed to a lengthy neuropsychological testing.

BrainSpan has more clinical, peer reviewed literature backing its methodology than any other fatty acid test on the market. With over 160+ publication son the fatty acid markers and RBC methods used and over 450 articles on my My Brain Solutions Cognitive Assessment, the pairing of the two provides the most reasonable, sound, objective way to a evaluate and assess neurocognitive function and progress in our treatment of his condition. Mr. Brown's BranSpan [sic] testing confirmed my mental examinations and nearly three-year relationship with Mr. Brown; that his memory and processing speeds have greatly deteriorated.

20. In response, Mutual affirmed its decision and argued that the information supplied "did not provide accepted medical findings/testing that would support a diagnosis or symptoms of Lyme disease."

21. Mr. Brown exhausted his administrative remedies under the Policy and Plan.

22. Mr. Brown remains unable to perform his prior occupation, or any other sedentary occupation, and the medical evidence submitted by Mr. Brown establishes the same.

23. Mutual's decision to the contrary is incorrect, arbitrary, and capricious.

5

24. Further, Mutual failed to provide a full and fair review and otherwise violated ERISA's claims procedure regulation.

25. As a result of the foregoing, Mr. Brown has suffered a loss in the form of unpaid benefits, among other things.

26. Mr. Brown is entitled to a judgment against the Defendants in the amount of the unpaid benefits under the Policy including, *inter alia*, LTD and STD benefits as well as an order directing Mutual to pay Mr. Brown future benefits.

27. Mr. Brown is also entitled to prejudgment interest and an award of attorney's fees under ERISA 502(g) in an amount to be proven.

WHEREFORE, Plaintiff, Thomas E. Brown, Jr., requests the Court grant her the following relief from Defendants:

a. A judgment in the amount of all benefits due under the Plan/Policy plus prejudgment interest;

b. A judgment ordering Mutual to continue to pay Mr. Brown LTD benefits for as long as he remains totally disabled under the Plan/Policy;

c. A judgment ordering Defendants to repay Mr. Brown his costs and attorney's fees, under ERISA 502(g); and

d. All other relief to which she is entitled, including de novo review of the decision to deny the claim.

Dated: March 21, 2019

                                       Andrew S. Davis, Esq. #5733
                                       LAMBERT COFFIN
                                       One Canal Plaza, Suite 400
                                       Portland, Maine 04101
                                       207.370.3010
                                       adavis@lambertcoffin.com

"I hereby appoint

*S-555*

to serve the within writ."

SHERIFF

Date: _____